| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |
| JAMIE BASSEL, D.C., P.C., | **MEMORANDUM & ORDER** |
| Plaintiff, | |
| – against – | |
| AETNA HEALTH INSURANCE COMPANY OF NEW YORK, *et al.*, | 17-cv-05179 (ERK) (RER) |
| Defendants. | |

Korman, *J.*:

      Jamie Bassel is a chiropractor who is outside Aetna's network of providers. Pl.'s Mot. Remand 3 ("Mot."). In July 2017, Bassel filed a verified complaint in New York State Supreme Court, Queens County, against Aetna Health Insurance Company of New York and other Aetna corporate entities, alleging that he was owed reimbursement by Aetna for services rendered to fifty-seven different patients. In his complaint, Bassel alleged unjust enrichment and violations of both N.Y. Ins. Law § 3224-a (the "Prompt Pay Act") and N.Y. Gen. Bus. Law § 349, prohibiting deceptive business practices. According to the complaint, Bassel confirmed with Aetna that each Aetna Plan Member who sought treatment at Bassel's practice was entitled to an out-of-network benefit for these services. Verified Complaint ¶ 18, Defs.' Notice of Removal, Ex. 1, Dkt. No. 1 ("Compl."). Bassel also alleged that he received "an authorization from each Plan Member to receive payment directly from Aetna." *Id.* Bassel submitted proofs of claim for payment to Aetna for each of the fifty-seven patients. *See e.g.*, *id.* ¶¶ 25, 34, 43, 52. Bassel alleged that he is owed $351,025 for services rendered to these patients. Pl.'s Mot. Remand 3, Dkt. No. 12 ("Mot.").

      Bassel served Aetna with the complaint in August 2017. Aetna filed a notice of removal to federal court within 30 days in accordance with 28 U.S.C. § 1446(b), on the ground that

1

Bassel's claims were fully preempted by the Employee Retirement Income Security Act ("ERISA"). Bassel then filed a motion to remand, raising for the first time a promissory estoppel claim, Mot. 3, and claiming that Aetna has failed to establish that Bassel's claims are fully preempted by ERISA, as determined by the "*Davila* test." Mot. 7. *See generally Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004); *see also McCulloch Orthopaedic Surgical Serv., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017).

Bassel argues that he is not the "type of party" who can bring an ERISA claim, Mot. 7, that his claims are not the type of claims which "implicate[s] coverage and benefit determinations," Mot. 10; *see McCulloch*, 857 F.3d at 149 (quoting *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 325 (2d Cir. 2011)), and that the ERISA savings clause permits claims brought under the New York Prompt Pay Act, Mot. 12. Aetna opposed, arguing that Bassel is the type of party who is subject to ERISA because he received an assignment of benefits from all fifty-seven of the patients listed in his verified complaint. Aetna specifically alleges that each of these patients are members of employee-sponsored health care plans which are governed by ERISA, and that the terms of at least some of the plans do not prohibit assignment of benefits to out-of-network providers. Defs.' Opp. 4, Dkt. No. 14 ("Opp."). Aetna also argues that Bassel's claims are "colorable claim[s] for benefits" under ERISA, and that there is "no other independent legal duty" that would defeat preemption. Opp. 2. Finally, because Bassel's claims "specifically relate to reimbursement," they are not subject to the ERISA savings clause. Opp. 3. Aetna also filed a motion to dismiss, incorporating by reference its preemption arguments, arguing that Bassel's claims are barred by a previous settlement agreement between the parties, and asserting that Bassel failed to exhaust his administrative remedies under ERISA. *See* Defs.' Mot. Dismiss 2, 14, Dkt. No. 17.

## DISCUSSION

### I. Removal Standard under ERISA

Federal jurisdiction exists "'only when the plaintiff's well-pleaded complaint raises issues of federal law,' and not simply when federal preemption might be invoked as a defense to liability." *Montefiore*, 642 F.3d at 327 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). However, where Congress "has clearly manifested an intent to make causes of action removable to federal court, the federal courts must honor that intent." *Id.* (quoting *In re WTC Disaster Site*, 414 F.3d 352, 373 (2d Cir. 2005)). Congress enacted ERISA as "a comprehensive civil enforcement scheme that completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Id.* (quoting *Davila*, 542 U.S. at 209). In *Davila*, the Supreme Court established a two-part test to determine if claims fall "within the scope" of ERISA's enforcement provisions under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 328. Claims are preempted by ERISA if they are brought "by an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and where "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. Both prongs must be satisfied for preemption. *Montefiore*, 642 F.3d at 328.

In *Montefiore*, the Second Circuit clarified this test: "First, we consider whether the plaintiff is the *type* of party that can bring a claim pursuant to [ERISA]; and second, we consider whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to [ERISA]." *Id.* Only after analyzing these two steps of the first *Davila* prong may a court proceed to determine whether there is an "independent legal duty" that might bring a plaintiff's claims outside the scope of ERISA. *Id.*

## II. Bassel's Claims are Fully Preempted By ERISA

Bassel's claims are fully preempted by ERISA under each prong of the *Davila* test. Though he is an out-of-network provider, Bassel accepted a valid assignment of benefits from his patients, and is therefore the "type of party" who can bring ERISA claims. *Id.* at 329–30. Additionally, Bassel asserts a "colorable claim for benefits," as his claims involve the *right* to payment under his patients' plans, and not merely the *amount* of payment for which he seeks reimbursement. *Id.* at 331. There is no "other independent legal duty that is implicated" by Aetna's actions. *Davila*, 542 U.S. at 210.

### A. Bassel is the "type of party" who may bring ERISA claims.

Under *Davila*'s first prong, preemption requires the plaintiff to have standing to pursue ERISA claims. *Montefiore*, 642 F.3d at 324. Health care providers who accept a valid assignment of benefits from plan beneficiaries have such standing. *McCulloch*, 857 F.3d at 148. Bassel argues, that he is not the "type of party" who can bring a claim under ERISA, thereby failing the first prong of the *Davila* inquiry. Mot. 7. He denies that he is relying on an assignment of benefits from the fifty-seven patients who are plan beneficiaries. Mot. 8. Bassel acknowledges that under the Second Circuit's holding in *Montefiore*, a valid assignment exists when a health care provider checks "Y" for "yes" "in the space certifying that the patient has assigned his claim to the [provider]." *Montefiore*, 642 F.3d at 329. Specifically, *Montefiore* held that "beneficiaries may assign their rights under ERISA § 502(a)(1)(B) to health care providers that have contracted to bill a benefit plan directly." *Id.* at 330. Bassel argues that *Montefiore* is thus limited to in-network providers only. Mot. 9. Bassel also asserts that he is similar to the plaintiff in *McCulloch*, an out-of-network orthopaedic surgeon who was deemed ineligible to accept a benefits assignment. *McCulloch*, 857 F.3d at 147.

4

But Bassel misunderstands both *McCulloch* and *Montefiore*. *McCulloch* acknowledges that *Montefiore* is not limited to in-network providers only, *id.*, contrary to Bassel's argument. McCulloch's claims fell outside the scope of ERISA not because he was an out-of-network provider, but because his patients' plans prohibited an assignment of benefits. *McCulloch*, 857 F.3d at 147. Therefore, the claim forms McCulloch submitted, with boxes indicating that he had accepted assignment, were "ineffective—a legal nullity." *Id.* At issue here, then, is not whether an out-of-network provider can ever be assigned benefits—surely he can—but rather, whether Bassel accepted a valid, permissible assignment of benefits from each of his patients. My review of the record affirms that he did.[1]

Aetna filed exhibits along with its opposition motion, including one Health Care Finance Administration claim form, HCFA 1500, for one of Bassel's patients, indicating that benefits had indeed been assigned to Bassel. Aff. of Scott Papp ("Papp Aff.") Opp. to Pl.'s Mot. Remand, Ex. F, Dkt. No. 15-6 ("Exhibit F"). Box 27 of this form asked, "Accept Assignment?" and presented two boxes for either YES or NO. *Id.* The box for YES was checked. *Id.*; *see also Montefiore*, 642 F.3d at 329 n.8. Papp also attested that Bassel transmitted such forms to Aetna "for each of the 57 patients named in the Verified Complaint." *Id.* ¶ 10.

In his reply, Bassel argues that this exhibit was a sample document sent to Aetna's counsel in the course of this litigation, and did not constitute an assignment of benefits. Pl.'s Reply in Supp. Mot. Remand 5, Dkt. No. 20-6 ("Reply"). Bassel suggested in his reply that he never sent such forms to Aetna to collect payment, but simply sent example forms to Aetna's attorneys at some later time. Bassel filed an affidavit, attesting that "[a]t no time did I or my office intend to accept an assignment of benefits." Aff. of Jamie Bassel ¶ 2, Ex. 3, Dkt. No. 20-3

---

[1] *Montifiore* allows me to consider supporting documentation in conducting the *Davila* analysis. *Montefiore*, 642 F.3d at 331–32.

("Bassel Aff. I"). Bassel also submitted the affidavit of Tamara Kolts, the medical biller at his practice, who attested somewhat cryptically that Bassel "did not submit a paper claim form to Aetna requesting payment unless Aetna requested a paper claim form." Aff. of Tamara Kolts ¶ 4, Ex. 4, Dkt. No. 20-4 ("Kolts Aff."). Kolts also attested that Exhibit F was an example of the HCFA forms that are "used by individual health service providers, like Dr. Bassel, for submitting claims to reimbursement from government and private insurers." *Id.* ¶ 9. Kolts attested that Bassel's patients "execute an authorization for payments, not an assignment of benefits," *id.* ¶ 15, and that authorization is "different" from assignment because it is "no more than a direction from the insured to the insurance carrier to send payment directly to the medical provider," and "never satisfies an insurer's demand for an assignment of benefits." *Id.* ¶ 17.

Bassel also submitted a third affidavit on behalf of the Collection Manager at his counsel's firm, Arthur Wobig, who attested that copies of unpaid claim forms were sent to Aetna's counsel, including Exhibit F. Aff. of Arthur Wobig ¶¶ 10, 12, Ex. 5, Dkt. No. 20-5 ("Wobig Aff."). Wobig swears that the redaction in Exhibit F merely covers up his own notation on the form. *Id.* ¶ 13. Bassel's reply and supporting affidavits essentially suggest that Exhibit F is some sort of fraud, representing merely a sample form that completely differed from whatever Bassel actually submitted for reimbursement, and that Bassel never submitted any kind of form accepting benefits assignment to Aetna in the course of seeking reimbursement—in spite of the allegations in his verified complaint that he had submitted proofs of claim for payment.

To clarify this, I ordered Bassel to submit copies of the proofs of claim for payment that he submitted to Aetna, according to his verified complaint, on behalf of each of the fifty-seven patients. *Id.* I directed the defendants to submit an affidavit that properly authenticated the forms that were submitted by Bassel to Aetna for payment, including Exhibit F. In response, Bassel

6

swore in a new affidavit that his office submitted *electronic* proofs of claim for each of his patients, which were essentially the electronic equivalents of HCFA 1500. Aff. of Jamie Bassel ¶ 4, Dkt. No. 27 ("Bassel Aff. II"). He swore that HCFA 1500 is "a paper version of the electronic claim file" and the "information on those HCFA 1500 forms fairly and accurately reflects information contained in the original proofs of claim electronically submitted to Aetna." *Id.* ¶ 14.

Defendants submitted affidavits swearing that the paper HCFA 1500 forms were submitted by Bassel's attorneys, with the representation that they were "copies of the unpaid Aetna claims." Aff. of Colin J. Boyle ¶ 7, Dkt. No. 29 ("Boyle Aff."). Bassel's counsel submitted fifty-seven folders, with HCFA forms for each patient, displaying that YES had been checked in Box 27 on each form. *Id.* ¶¶ 9–10. A paralegal for Aetna's counsel attested that she had located the electronic copies of these claim forms, and had obtained such copies for fifty-six of the fifty-seven patients. Aff. of Elizabeth C. Petrozelli ¶¶ 5, 7, Dkt. No. 30 ("Petrozelli Aff."). She also swore that the information on an HFCA 1500 form is transmitted electronically to Aetna when a provider submits an electronic claim, including the information in Box 27, *id.* ¶¶ 12, 13, which further supports the information in Bassel's second affidavit, *see* Bassel Aff. II, ¶ 14. On the electronic form, assignment of benefits is indicated by the letter "A" under an "Assign" field, which Petrozelli swore was indicated for all of Bassel's claims. *Id.* ¶ 15, *see also* Petrozelli Aff., Ex. A, Dkt. No 30-1. Though Petrozelli could not locate the electronic version of the claim form submitted for patient SR, *see* Petrozelli Aff. ¶ 6, both the Bassel and Boyle affidavits affirm that the HCFA 1500 forms submitted to Aetna's counsel by Bassel represent the same information that was submitted electronically for *all* patients. *See* Bassel Aff. II ¶¶ 13–14; Boyle Aff. ¶¶ 9–12.

This is sufficient to confirm that Bassel, as he alleged in his complaint, submitted proofs of claim for payment electronically on behalf of all fifty-seven patients, and every one of those submissions reflected that he was accepting an assignment of benefits under the patients' plans. Essentially then, Bassel's outrage over Exhibit F was both manufactured and unwarranted; nothing in Exhibit F misrepresented the information that Bassel submitted for payment, and Bassel's own attorney sent HCFA 1500 forms to Aetna's counsel as an example of the information that Bassel submitted electronically for each patient.

Because Bassel accepted an assignment of benefits from each of his patients, the remaining issue under *McCulloch* is whether his patients' plans contained any language prohibiting such an assignment. Bassel argues that he is similarly situated to the plaintiff in *McCulloch*, but nowhere does Bassel indicate that his patients' plans prohibited an assignment of benefits, though he does argue in a footnote that he "believes discovery will show the plans identified in the Complaint, just like the plans in *McCulloch* will say Aetna will never approve an assignment from an out-of-network provider." Mot. 9 n.1. A review of some of the plans at issue, submitted as exhibits to Aetna's opposition, Papp Aff., Exs. A-E, Dkt. No. 15-1–15-5, confirms that they contain no language prohibiting assignment of benefits to an out-of-network provider such as Bassel. Therefore, "at least some of the claims for reimbursement" were validly assigned, and if other patients' plans at issue do contain anti-assignment provisions, they would be subject to this court's supplemental jurisdiction, provided the other prongs of the *Davila* inquiry are satisfied. *Montefiore*, 642 F.3d at 332–33. Bassel is the "type of plaintiff" who can bring claims under ERISA. *See Salzberg v. Aetna Insurance Co.*, No. 17 CV 7909, 2018 WL 1275776, at *3 (S.D.N.Y. Mar. 12, 2018).

B. <u>Bassel's claims involve the "right to payment."</u>

Under the second step of the first *Davila* prong, a colorable ERISA claim exists "where the claim implicates coverage and benefit determinations as set forth by the terms of the ERISA benefit plan, and not simply the contractually correct payment amount or the proper execution of the monetary transfer." *Montefiore*, 642 F.3d at 325. *Montefiore* distinguished between claims involving the "right to payment," which require an interpretation of the language in the plan at issue, and claims involving the "amount of payment," which relate to "the computation of contract payments or the correct execution of such payments." *Id.* at 331. Claims involving the "right to payment," rather than the "amount of payment," are colorable claims for benefits under ERISA. *Id.* Whether a claim involves the "amount of payment" ought to be narrowly construed. *Enigma Mgmt. Corp. v. Multiplan*, 994 F. Supp. 2d 290, 300–01 (E.D.N.Y. 2014).

Bassel alleged, broadly, that Aetna "refused to pay out-of-network benefits" that he was owed in reimbursements. Compl. ¶ 5. He also alleged that Aetna has never provided "written notification" regarding why it was "not obligated to pay the recognized/allowable rate for services furnished" to his patients. *Id.* ¶ 28. Bassel now argues that his claims are not preempted by ERISA because they involve the amount of payment. Mot. 10. Citing no authority, Bassel claims that because Aetna "has yet to file a responsive pleading . . . the claims at issue are and will remain the proper amount of payment owed by Aetna." *Id.* But whether Aetna filed an answer does not determine "whether the actual claims that [a plaintiff] asserts can be construed as colorable claims for benefits pursuant to § 502(a)(1)(B)." *Montefiore*, 642 F.3d at 330. Bassel also argues that his claims are "amount of payment" claims "because Aetna never communicated why it was not paying plaintiff." Mot. 11. But Aetna's alleged silence on its alleged refusal to pay does not convert Bassel's claims from "amount" to "right of payment" claims.

9

Bassel did not allege that Aetna disputed the calculation of the amounts owed, or that his claims relate to "the computation of contract payments or the correct execution of such payments." *Montefiore*, 642 F.3d at 331. Rather, he simply alleged that Aetna "refused" to pay, Compl. ¶ 5, after "repeated demands," *see e.g.*, Compl. ¶¶ 27, 54, 216. In his motion to remand, however, Bassel frames all of this as an "amount of payment" issue, arguing that "discovery will show Aetna has already recognized Dr. Jamie Bassel, D.C., P.C., has a right to payment for services he rendered to his patients." Mot. 11. Aetna counters that because Bassel alleged that he performed "medically necessary health care services," his right to reimbursement turns on the interpretation of his patients' ERISA plans, which would constitute a "right to payment" issue preempted by ERISA. Opp. 12.

Bassel's complaint as alleged cannot be construed as an "amount of payment" issue. He made no allegations regarding Aetna's reimbursement schedule or calculation methods, nor did he raise any issue regarding "a simple rate calculation analysis." *Enigma*, 994 F. Supp. 2d. at 301. Bassel claimed he is owed for "medically necessary health care services" rendered to each of his patients. *See, e.g.*, Compl. ¶ 24, 69, 258. Whether this is correct depends upon interpretation of his patients' plans. *See Neuroaxis Neurological Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 Civ. 8517, 2012 WL 4840807, at *4 (S.D.N.Y. Oct. 4, 2012) (holding that whether underpayment of claims was due to medical necessity "is a classic 'right to payment'—not 'amount of payment'—determination."). Bassel's claims therefore implicate coverage and benefit determinations, and are colorable claims under ERISA. *See Montefiore*, 642 F.3d at 330.

C. Bassel's claims involve no "other independent legal duty."

Finally, complete ERISA preemption requires there must be "no other independent legal duty that is implicated by [the] defendant's actions." *Davila*, 542 U.S. at 210. No such independent duty exists where the plaintiff's claims are "inextricably intertwined with the interpretation of Plan coverage and benefits." *Montefiore*, 642 F.3d at 332. This "turns on whether the provider agreement between the insurance company and the provider creates a separate legal duty independent of the ERISA plan." *Neuroaxis*, 2012 WL 4840807, at *4. Where there is "no provider agreement—or any other agreement, for that matter—between the parties, there is no independent legal duty owed to Plaintiff by Defendant." *Id.*

Bassel never identifies an independent legal duty in his briefing. *See Saini v. Cigna*, No. 17 Civ. 1922, 2018 WL 1959551, at *6 (E.D.N.Y. Apr. 24, 2018) (holding no independent legal duty where plaintiff did not identify any such duty in her pleadings). In fact, Bassel does not argue against preemption beyond the first prong of the *Davila* test. *See* Mot. 8, 10–12. His causes of action—unjust enrichment and violations of N.Y. Gen. Bus. Law § 349 and the Prompt Pay Act—are all based Aetna's failure to pay what he believed he was owed according to his patients' plans.

There is no independent agreement between the parties; Bassel is an out-of-network provider and no separate agreement between him and Aetna exists at all. None of Bassel's theories of recovery present an independent legal duty, as is required to defeat preemption. Bassel's unjust enrichment claim "seek[s] 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do[es] not attempt to remedy any violation of a legal duty independent of ERISA." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Davila*, 542 U.S. at 214); *see also Neurological Surgery, P.C. v. Siemens Corp.*,

No. 17-cv-3477, 2017 WL 6397737, at *5 (E.D.N.Y. Dec. 12, 2017). Nor does an independent legal duty exist where a plaintiff alleges causes of action under N.Y. Gen. Bus. Law § 349. *See Saini*, 2018 WL 1959551, at *6. This is also true of the Prompt Pay Act. *See Neurological Surgery, P.C. v. Northrop Grumman Sys. Corp.*, No. 2:15-cv-4191, 2017 WL 389098, at *10 (E.D.N.Y. Jan. 26, 2017) (holding that asserting claims under N.Y. Ins. Law § 3224-a is an "attempt to circumvent ERISA" and is therefore preempted); *Weistenthal v. United Health Care Ins. Co.*, Nos. 07 Civ. 1175, 07 Civ. 0945, 2007 WL 4292039, at *7 (S.D.N.Y. Nov. 29, 2007) (same); *Berry v. MVP Health Plan, Inc.*, No. 1:06-cv-120, 2006 WL 4401478, at *5 (N.D.N.Y. Sept. 30, 2006) (same, holding that plaintiffs' cause of action under the Prompt Pay Act does not allege an independent legal duty because it is "based on the same factual allegations, to wit, that defendants failed to provide plaintiffs, as the beneficiaries' assignees, the benefits to which they are entitled under the terms of the plans").

Finally, Bassel's late-breaking promissory estoppel claim, Mot. 3, was not properly pleaded as a cause of action in his complaint. But even if it had been, it would not give rise to an independent legal duty here. Promissory estoppel claims are available in ERISA actions under "extraordinary circumstances," *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85–86 (2d Cir. 2001), such as where a provider or beneficiary reasonably relied on statements *outside* the "actual coverage terms of the health care plan," *see McCulloch*, 857 F.3d at 149–50. In *McCulloch*, the plaintiff's promissory estoppel claim rested "on whether Aetna promised to reimburse him for seventy percent of the UCR rate, whether he reasonably and foreseeably relied on that promise, and whether he suffered a resulting injury." *Id.*

Here, Bassel merely alleged that Aetna "confirmed . . . each Plan Member was entitled to an out-of-network benefit." Compl. ¶ 19. This hardly explains what—if any—promise Aetna

made, let alone whether Bassel's reliance was reasonable. Indeed, Aetna's communication with Bassel "may have been a mere summary of the patient's health care plan and the coverage and benefits that would apply to an 'out-of-network' provider." *McCulloch*, 857 F.3d at 149. Bassel must not only allege that there existed a "promise which [Aetna] should reasonably expect to induce action or forbearance on the part of [Bassel] and which does induce such action or forbearance," Restatement (Second) of Contracts § 90 (1981), but also "facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" *Devlin*, 274 F.3d at 86 (quoting *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999). Bassel has alleged no promissory estoppel claim at all, and the facts as currently pled in his complaint do not meet this standard. Bassel's claims therefore fail the second prong of *Davila*, and are fully preempted by ERISA.

III.   *The ERISA Savings Clause Does Not Apply to Bassel's Claims*

The ERISA savings clause provides that ERISA's enforcement scheme does not supplant "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). "[U]nderstanding of the savings clause must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), 29 U.S.C. § 1132(a)." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). Congress intended "that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress." *Id.*

Bassel argues that the ERISA savings clause nonetheless applies to his claim under the Prompt Pay Act, because that statute "regulates insurance." Mot. 12. Bassel admits that "none"

13

of the cases he cites in support of his argument hold that "the ERISA savings clause applie[s]." *Id.* 14. Indeed, the law is the opposite. *See infra* 11–12. Bassel also attempts to distinguish the state statutory remedy from ERISA by arguing that the Prompt Pay Law's enforcement remedies "are for violations of the [Act], not for violation of any plan procedure." Mot. 15.

But this distinction is unavailing. The alleged distinction between violations of the Act itself and violations of "plan procedure" does not obscure that the "motive of his action, to wit, [is] to recover benefits for medical services to which, plantiffs, as assignees, believe they are entitled under the terms of the plans." *Berry*, 2006 WL 4401478, at *5. Though *some* state insurance regulatory schemes have been held to fall within ERISA's savings clause, *see Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 107 (2d Cir. 2017) (holding that N.Y. Gen. Oblig. Law § 5-335 falls within ERISA savings clause), that is not true of the Prompt Pay Act. That statute provides the same remedy envisioned by ERISA; indeed, the statute is titled, "Standards for prompt, fair and equitable settlement of claims for health care and payments for health care services." N.Y. Ins. Law § 3224-a. To exempt claims brought under this statute would allow plaintiffs to use a "separate vehicle" as an end-run around ERISA's comprehensive remedial scheme. *Davila*, 542 U.S. at 217–18. Here, where all of Bassel's causes of action rest on the same factual allegations, Bassel is attempting to use the Prompt Pay Act as an alternative "to vindicate [his] rights under the relevant . . . ERISA-governed plans." *Berry*, 2006 WL 4401478, at *5. ERISA forbids this.

## CONCLUSION

The plaintiff's motion to remand is denied. Because the causes of action alleged in the complaint are preempted, the complaint is dismissed without prejudice to repleading claims that would not be preempted in New York State Supreme Court. Indeed, Aetna at the very least

14

implicitly concedes that some of that patients' plans at issue *may* contain anti-assignment provisions which would defeat preemption. Opp. 9.

                                                    **SO ORDERED.**

Brooklyn, New York                              *Edward R. Korman*
September 7, 2018                                 Edward R. Korman
                                                           United States District Judge